UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THURUPARAN MANOHARAN et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 25-12422-LTS |
| MAERSK INC. et al., | ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM AND ORDER ON MOTIONS TO DISMISS (DOC. NOS. 33, 36, 41)
AND MOTIONS TO STRIKE (DOC. NOS. 49, 51, 53, 69, 71)

July 15, 2026

SOROKIN, J.

This putative class action arises from the inclusion of a certain stable-value fund in the retirement plan offered by defendant Maersk Inc.  Plaintiffs allege that the fund consistently underperformed comparable alternatives and that the Plan's investment in the fund was an impermissible party-in-interest transaction.  They claim that by offering and maintaining the product, Defendants—including the Maersk Pension Committee, the Plan's investment advisor, and the Plan's trustee—violated their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants moved to dismiss, the motions (including subsidiary motions to strike filed by Plaintiffs) are fully briefed, and the Court heard argument on May 7, 2026.  For the reasons explained below, the motions to strike are DENIED and the motions to dismiss are ALLOWED IN PART.

I.    BACKGROUND

    A.    Facts[1]

Maersk Inc. is a global transport and logistics company.  Doc. No. 1 ¶ 37.[2]  Maersk offers

its employees a defined-contribution retirement plan, the Maersk Inc. Savings Plan ("the Plan").

Id. ¶¶ 1, 47.  During the class period, that is, from September 2, 2019, to present, Maersk Inc. has

been the plan's sponsor and administrator.  Id. ¶ 39.  The Maersk Pension Committee—a body

composed of Maersk senior officers and/or directors appointed by Maersk's board of directors—

"serves as fiduciary of the Plan and has responsibility to exercise discretionary control over the

Plan's management and administration."  Id. ¶ 41.  Mercer Investments is the Plan's investment

advisor.[3]  Id. ¶ 43.  John Hancock Trust Company, LLC ("John Hancock"), is the Plan's trustee,

and its affiliate, John Hancock Retirement Plan Services, is the Plan's recordkeeper.[4]  Id. ¶ 45.

John Hancock also allegedly serves as the Plan's investment manager and "manages plan assets

and investments . . . and acquires or disposes of investments as necessary to implement

Participant directions."  Id. ¶ 46.

---

[1] The Court draws the following facts from the complaint, accepting all well-pleaded facts and drawing all reasonable inferences in Plaintiffs' favor, as it must on a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Court also considers the Plan's Form 5500s, which are publicly filed and referenced throughout the complaint, and which both sides agree may be considered in the present posture.  See, e.g., Doc. No. 1 ¶¶ 31, 33–35, 39; Doc. No. 34 at 19; Doc. No. 47 at 20 n.8; see also, e.g., Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013).  The parties dispute the extent to which the Court may consider other documents submitted by Defendants; the Court addresses those disputes below.

[2] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

[3] Although the complaint suggests that Mercer also had an investment-manager role, Doc. No. 1 ¶ 43, counsel for Plaintiffs conceded at oral argument that Mercer is and was only an investment advisor.  Given its resolution of the motions to dismiss, the Court need not now determine what narrowing effect this concession has on Mercer's potential liability.  The concession will undoubtedly affect the amended complaint, should Plaintiffs seek leave to file one.

[4] John Hancock Retirement Plan Services is not named as a defendant in this suit.

During the class period, the Plan had more than 6,000 participants.  Id. ¶ 53.  Its assets exceeded $900 million, over ten percent of which were invested in a single fixed annuity product.  Id. ¶¶ 53–55.  The complaint calls this product the "Hancock FA" and alleges that it is a "fixed annuity contract with John Hancock."  Id. ¶ 2.  The "Hancock FA" was the Plan's only fixed annuity offering.  Id. ¶¶ 54, 56.  Plaintiffs explain that "[i]nstitutional fixed annuities in retirement plans are . . . individually negotiated contracts entered into between a retirement plan and an insurance company," which are "intended to preserve principal and provide steady, positive, contractually guaranteed returns known as 'crediting rates' set and reset at the discretion of the insurer."  Id. ¶ 57.

Plaintiffs allege Maersk "obfuscated and hid" details about the "Hancock FA" from Plan participants, including the material terms of the "Hancock FA" contract.  Id. ¶¶ 31–32.  Per the complaint, Maersk described the "Hancock FA" in "different ways, making it difficult for Plan participants to identify and understand the investment."  Id. ¶ 33.  Plan documents and filings variously referred to the product as the "Maersk stable value fund," "New York Life Investments," "NYLIC Anchor Account," and "Stable Value Option."  Id.  Notably, "Plan participant account statements identify the contract" as "NYL Insurance Anchor IV."  Id.  In none of the cited documents does Maersk ever refer to the product as the "Hancock FA."

Retirement-plan sponsors submit Form 5500s to the Department of Labor to satisfy their annual ERISA reporting requirements.  See, e.g., Form 5500 Series, U.S. Dep't of Lab., https://www.dol.gov/agencies/ebsa/employers-and-advisers/plan-administration-and-compliance/reporting-and-filing/form-5500 [https://perma.cc/2RLX-J8TR] (last visited July 2, 2026).  As relevant here, a Form 5500's Schedule C details the plan's service providers' information; its Schedule D details the plan's interests in certain collective investment vehicles;

and its Schedule H details the plan's financial information.  Id.; see generally Doc. No. 43-3 (the Plan's Form 5500s for 2019 through 2023).

From 2019 through 2023, the Plan's Form 5500 Schedule Ds identify an interest in a "New York Life Anchor Account" sponsored by "New York Life Insurance Company," which the supplemental Schedule Hs refer to as the "Maersk stable value fund."[5]  Doc. No. 43-3 at 16, 41, 45 (Form 5500 for 2019); id. at 63, 89–90 (Form 5500 for 2020); id. at 105, 132–33 (Form 5500 for 2021); id. at 147, 174–75 (Form 5500 for 2022); id. at 189, 219, 221 (Form 5500 for 2023).  This is the only stable-value option with a meaningful share of the Plan's assets identified in the documents.  See generally Doc. No. 43-3.  Within the supplemental Schedule Hs, the "Maersk stable value fund" is flagged as a "[p]arty-in-interest transaction[] as defined by ERISA"—the sole asset so designated.  Id. at 41, 44, 45, 48, 89–90, 132–33, 174–75, 219, 221.

The Forms' Schedule Cs list John Hancock Retirement Plan Services as a service provider but do not expressly list John Hancock Trust Company, LLC, as such a provider, and list no entity as the Plan's directed trustee.  Doc. No. 43-3 at 11, 58, 100, 143, 185.  The supplemental Schedule Hs for 2023 note that the financial information presented was "certified as complete and accurate by John Hancock Trust Company LLC."  Id. at 219, 221.  Outside of the auditor's notes (discussed below), these Schedule C and H disclosures are the Form 5500s' sole references to John Hancock.  See generally id.

The Form 5500s each contain a "Notes to Financial Statement" section prepared by the Plan's auditor, PricewaterhouseCoopers LLP.  PwC's Notes state that John Hancock Trust

---

[5] In years 2020 through 2023, the Forms' supplemental Schedule Hs refer to the issuer of the "Maersk stable value fund" as "New York Life Investments" and describe the investment as "NYLIC Anchor Account."  Doc. No. 43-3 at 89, 132, 174, 219, 221.

Company LLC "is the trustee of the Plan."  Id. at 32, 80, 123, 165, 209.  Under the header

"Investment in the Maersk Stable Value Fund," PwC's Notes state:

> The Plan is a party to a fully benefit-responsive investment contract with the John Hancock Trust Company, LLC ("John Hancock") . . . .  John Hancock maintains the contributions in a general account.  The account is credited with earnings on the underlying investments and charged for participant withdrawals and administrative expenses.  The contract earnings represent the income from specific assets owned by John Hancock in a pooled separate account.  The contract issuer is contractually obligated to repay the principal.

Id. at 37–38, 85–86, 129, 171, 214; see also Doc. No. 1 ¶¶ 46, 50.  PwC's Notes also state, under

the header "Related Party Transactions": "Certain Plan investments are managed by John

Hancock.  John Hancock is the trustee and recordkeeper for the Plan and, therefore, these

transactions qualify as party-in-interest transactions."  Doc. No. 43-3 at 38, 86, 130, 172, 215;

see also Doc. No. 1 ¶ 46.

Again, beyond the Schedule C and H disclosures mentioned above, PwC's Notes provide

the only references to John Hancock in the Form 5500s.  PwC's Notes are the sole factual basis

for Plaintiffs' allegations that the product at issue—the "Hancock FA"—is a John Hancock

product, contrary to Plan documents' and Form 5500s' myriad other references to New York

Life, "NYL," "NYLIC," and so on.

Plaintiffs Thuruparan Manoharan, Anthony Garcia, and Matthew Howard participated in

the Plan during the class period.[6]  Doc. No. 1 ¶¶ 24–26.  Manoharan held the "Hancock FA" in

his Plan investment portfolio.  Id. ¶ 24.  Garcia and Howard did not, but they "would have

diversified [their] Plan portfolio[s] . . . by investing in a fixed annuity or comparable

investment . . . if one had been offered with reasonable returns," which the "Hancock FA" did

not offer.  Id. ¶¶ 25–26.

---

[6] A fourth plaintiff, Shannon Reeves, voluntarily dismissed her claims shortly after the complaint was filed.  Doc. No. 12.

Plaintiffs contend that Maersk maintained the "Hancock FA" as the Plan's sole fixed-annuity-type offering since at least 2009 without engaging in a process to periodically investigate, monitor, or replace the offering.  Id. ¶¶ 62, 64.  They allege that, despite the sizeable position the "Hancock FA" occupied within the Plan, Maersk did not negotiate higher crediting rates even though the "Hancock FA" offered higher rates in the marketplace, nor did Maersk solicit competitive bids through RFIs and RFPs though comparable funds offered consistently higher crediting rates.  Id. ¶¶ 51, 53–62, 65–66, 70–71.  Plaintiffs allege that this arrangement allowed John Hancock to reap a large "spread" from the "Hancock FA," benefiting John Hancock—the Plan's trustee—at the expense of the Plan and its participants.  Id. ¶¶ 71–72.

B.    Procedural History

Plaintiffs assert three claims under ERISA.  First, they allege Defendants breached their duties of loyalty and prudence.  Id. ¶¶ 87–89 (citing 29 U.S.C. § 1104(a)(1)(A)–(C)).  Second, they allege Defendants caused the Plan to engage in an impermissible party-in-interest transaction with John Hancock.  Id. ¶¶ 90–92 (citing 29 U.S.C. § 1106).  Finally, they assert a claim of co-fiduciary liability against each defendant.  Id. ¶¶ 93–96 (citing 29 U.S.C. § 1105(a)).

Plaintiffs bring these claims on behalf of the Plan and of a class of Plan participants and beneficiaries defined as follows:

> All participants in the Maersk Inc. Savings Plan during the Class Period, along with their beneficiaries and alternate payees of record, excluding the officers and directors of Maersk Inc. and Maersk Agency USA Inc., the members of the Maersk Inc. Pension Committee, and any participant or beneficiary with fiduciary responsibility for the Plan's investments.

Id. ¶¶ 76, 77.  They also assert claims on behalf of a subclass of class members who had a "balance in the Plan's fixed annuity investment during the Class Period."  Id. ¶ 78.  They assert that class certification is appropriate under Rules 23(b)(1) and 23(b)(2).  Id. ¶¶ 84–85.

6

Each defendant moved to dismiss the claims against it.  Doc. Nos. 33, 36, 41.  Defendants raise two threshold issues—that Plaintiffs lack Article III standing and that Plaintiffs' claims are barred by a release in an earlier lawsuit—and Rule 12(b)(6) arguments.  Doc. Nos. 34, 37, 42. The cross-cutting issue driving these motions to dismiss is the assertion that the Plan has not offered, and does not offer, a John Hancock fixed annuity product.[7]  See Doc. No. 34 at 17 ("Plaintiffs' lawsuit should be dismissed because it rests on a fundamental error: Plaintiffs challenge the performance of an investment that the Plan does not offer." (emphasis omitted)); Doc. No. 42 at 11 ("Plaintiffs' claims fail because they are based on a factually flawed premise: the Plan's stable value fund is not a [John Hancock Trust Company] product." (citation modified)); see also Doc. No. 37 at 5 (describing claims in terms of "the New York Life Anchor Account that Plaintiffs incorrectly refer to as the 'Hancock FA'").

Defendants submitted additional documents to support their motions to dismiss. Plaintiffs agree the Court may consider some of these documents on a motion to dismiss (like the Form 5500s, Doc. No. 43-3), but Plaintiffs moved to strike others as improper at the pleadings stage.  Doc. No. 49 (challenging Doc. No 34-2); Doc. No. 51 (challenging Doc. Nos. 43-1, -2); Doc. No. 53 (challenging Doc. No. 38-1).  The motions to dismiss and motions to strike are fully briefed.  This briefing spawned two additional motions to strike, Doc. No. 69 (challenging Doc. Nos. 59, 59-1 to -5, 60); Doc. No. 71 (challenging Doc. Nos. 63, 63-1), also fully briefed.

The Court held oral argument on May 7, 2026.  Doc. No. 81.  It directed Plaintiffs and Maersk to exchange limited, informal discovery on the key threshold question—the true identity

---

[7] John Hancock notes that it informed Plaintiffs of this alleged mistake before moving to dismiss and that Plaintiffs declined to dismiss (or amend) the complaint.  Doc. No. 42 at 11 n.10.

of the so-called "Hancock FA." The parties filed a joint status report on the outcome of that discovery. Doc. No. 82. The Court now resolves all pending motions.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard requires more than "labels and conclusions" or "naked assertions devoid of further factual enhancement." Id. (citation modified). In considering a motion to dismiss, a court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. Watterton v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, a court disregards factual allegations in the complaint that have been "conclusively contradicted" by other materials properly considered on a motion to dismiss. Lister v. Bank of Am., N.A., 790 F.3d 20, 23 (1st Cir. 2015).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of showing they have Article III standing. TransUnion LLC v. Ramirez, 594 U.S. 413, 430 (2021). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" Id. at 431 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)); see also Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 371 (1st Cir. 2023) (noting typical plausibility standard applies when evaluating standing at motion-to-dismiss stage).

## III.    DISCUSSION

Plaintiffs' theory of the case hinges on one basic, imminently answerable question: Is the stable-value fund at issue a John Hancock product or a New York Life product? If it is a New York Life product—as indicated on Plan participants' account statements (Doc. No. 1 ¶ 33) and on the Form 5500 schedules prepared by Maersk (Doc. No. 1 ¶ 33; see also, e.g., Doc. No. 43-3 at 16, 41) and as pressed by Defendants (see, e.g., Doc. Nos. 63-1, 82)—then Plaintiffs'

8

complaint fails. Plaintiffs' prohibited-transaction and duty-of-loyalty claims fail on their own terms; if the product is not a John Hancock product, Plaintiffs have not alleged a prohibited transaction. Doc. No. 1 ¶¶ 2–3, 88, 90–91. Plaintiffs' duty-of-prudence claim fails; the Court cannot assess whether Plaintiffs have identified meaningful comparators relative to a fund— presumably the New York Life stable-value fund—whose characteristics they have not pleaded. Id. ¶¶ 65–72, 87. And their derivative co-fiduciary liability claims fail for the same reasons. Id. ¶¶ 93–96. This identity issue is essential for an even more fundamental reason: Article III standing. Whether Plaintiffs have plausibly alleged a cognizable injury traceable to John Hancock's conduct turns in large part on whether the product is a John Hancock product.

The complaint labels the product the "Hancock FA." But the factual allegations in the complaint and the Form 5500s—except for, maybe, PwC's Notes to Financial Statements— describe a New York Life product, not a John Hancock fund. The complaint alleges that Plan participants' account statements refer to the product as "NYL Insurance Anchor IV." Doc. No. 1 ¶ 33. It points out, as the Form 5500s themselves show, that the product is identified as a New York Life product using the name "New York Life Anchor Account" or "NYLIC Anchor Account." Id.; Doc. No. 43-3 at 16, 41, 45, 63, 89–90, 105, 132–33, 147, 174–75, 189, 219, 221.

The Court and the parties extensively discussed this issue at the May 7 motion hearing. All parties recognized that the challenged product's identity is a pivotal, threshold question for evaluating the complaint as pleaded. Plaintiffs acknowledged that they may have "labeled [the product] wrong" and indicated they would seek leave to amend the complaint if the motions to dismiss were granted.

At the hearing, Plaintiffs said they wanted more information regarding their allegation that the "Hancock FA" was a John Hancock product. The Court directed Plaintiffs and Maersk

9

to exchange limited, informal discovery on this topic.  That discovery yielded a declaration from

Willem Lagaay, a member of Maersk's Pension Committee, attesting that during the class

period, "the Plan has never offered a stable value investment issued by John Hancock Trust

Company, LLC or any of its affiliates."  Doc. No. 82 at 2; see also Doc. No. 63 (earlier Lagaay

declaration attesting that New York Life stable-value contract, effective December 1, 2012,

remains in effect for the Plan).  These sworn attestations accord with the Form 5500s and

specific factual allegations in the complaint.  Doc. No. 1 ¶ 33; Doc. No. 43-3 at 16, 41, 45, 63,

89–90, 105, 132–33, 147, 174–75, 189, 219, 221.

Plaintiffs offer nothing to contradict these sworn attestations.  They seek additional

discovery related to the "preparation, review, editing, or discussion of the content of Maersk's

Form 5500s," Doc. No. 82 at 1, but they have not explained how this discovery would shed light

on the critical issue here—whether, despite all the indications to the contrary, the at-issue

product is a John Hancock product.  The discovery Plaintiffs seek does not bear directly on that

question.  Plaintiffs have failed to establish a reasonable basis to warrant additional discovery, at

the pleadings stage, on whether the product at issue is a John Hancock fund.

On the record before the Court, Plaintiffs have failed to plausibly allege that the product

in question is a John Hanock product.  That failure is fatal to their complaint.

The Court proceeds as follows.  First, it explains why it denies Plaintiffs' motions to

strike.  Second, it explains why Plaintiffs lack Article III standing as to their claims against John

Hancock.  Third, it explains why Maersk's release defense does not bar Plaintiffs' clams, at least

as they have been formulated to date.  Finally, it otherwise grants the pending motions to dismiss

and permits Plaintiffs to seek leave to file an amended complaint.

A.    <u>Motions to Strike</u>

Plaintiffs filed three motions to strike certain documents submitted in support of Defendants' motions.  Doc. No. 49 (citing Doc. No. 34-2); Doc. No. 51 (citing Doc. Nos. 43-1, 43-2); Doc. No. 53 (citing Doc. No. 38-1).  At a high level, Plaintiffs contend that these documents are not properly before the Court for purposes of resolving motions to dismiss for failure to state a claim.  Plaintiffs alternatively request that the Court convert the motions to dismiss into motions for summary judgment and permit the parties to proceed to discovery.  Plaintiffs also moved to strike additional documents submitted in support of John Hancock's and Maersk's oppositions to its original motions to strike, for much the same reasons.  Doc. No. 69 (citing Doc. Nos. 59, 59-1, 59-2, 59-3, 59-4, 59-5, 60); Doc. No. 71 (citing Doc. Nos. 63, 63-1).

Plaintiffs' motions to strike fail for three reasons.  First, when considering a Rule 12(b)(6) challenge, the Court may look beyond the four corners of a complaint to "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss."  <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55–56 (1st Cir. 2012) (citation modified).  Some of the challenged documents fit into these exceptions; for instance, Plaintiffs' complaint relies on some of the investment contracts Defendants have submitted.  <u>Compare</u> Doc. No. 1 ¶¶ 33, 55–54–56, 64, 72 (describing Plan contract for stable-value fund), <u>with</u> Doc. No. 34-2 (Maersk investment contract with New York Life and riders).  Second, as mentioned above, Defendants have raised a colorable Rule 12(b)(1) challenge to Plaintiffs' Article III standing.  Doc. No. 34 at 17–19; Doc. No. 37 at 1; Doc. No. 42 at 5 n.1.  To determine its jurisdiction, the Court may consider a broader universe of documents, including exhibits and affidavits attached to the motion to dismiss.  <u>Aversa v. United States</u>, 99 F.3d 1200, 1209–10 (1st Cir. 1996); <u>Gonzalez v. United States</u>, 284 F.3d 281, 288 (1st Cir. 2002).  Finally, the balance of

the challenged documents are simply immaterial to the Court's analysis. The Court therefore need not "strike" those challenged documents. The motions to strike (Doc. Nos. 49, 51, 53, 69, 71) are DENIED.

####    B.    Standing

An ERISA plaintiff, like all plaintiffs in federal court, must establish the irreducible minimum of constitutional standing: that the plaintiff (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. See Cunningham v. Cornell Univ., 604 U.S. 693, 708–09 (2025) (citing Thole v. U.S. Bank N.A., 590 U.S. 538, 544 (2020)); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

Defendants argue the complaint must be dismissed for lack of standing because the "Hancock FA" is not an investment within the Plan's portfolio. Doc. No. 34 at 17–19; Doc. No. 37 at 1; Doc. No. 42 at 5 n.1. Because Plaintiffs' allegations "rest entirely on a non-existent Plan investment," Defendants argue, they cannot show any injury traceable to Defendants' conduct, and they cannot show that the equitable relief Plaintiffs seek (e.g., disgorgement of John Hancock's profits) would remedy their alleged injury. Doc. No. 34 at 17–19.

As noted above, the record before the Court shows that the challenged product is not a John Hancock offering. The only injury Plaintiffs attempt to connect to John Hancock is the "ill-gotten profits" it supposedly "reaped" from the allegedly prohibited transactions. Doc. No. 1 ¶ 91. Aside from their prohibited-transaction allegation, Plaintiffs do not allege that John Hancock plays any role other than a directed trustee, see id. ¶ 46, and they do not allege any injuries fairly traceable to John Hancock's directed-trustee role. But if the product is not a John Hancock product (and it is not), then Plaintiffs have not been injured by a prohibited transaction involving John Hancock. Plaintiffs thus have not plausibly alleged that any injury they have

12

suffered is fairly traceable to John Hancock's conduct.  Cf. Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (noting that traceability requires that "the opposing party must be the source of the harm").  Accordingly, John Hancock's motion to dismiss is ALLOWED insofar as it contends Plaintiffs lack Article III standing to bring the asserted claims against it.

The analysis differs for the other defendants.  Even though Plaintiffs have not plausibly alleged that the product is a John Hancock offering, they nonetheless allege inadequate oversight and selection of the stable-value fund giving rise to ERISA liability, and they plausibly allege that their injuries are fairly traceable to that misconduct on the part of Maersk and Mercer (though, as the Court will explain, those claims fail on the merits).  Accordingly, insofar as Maersk's and Mercer's motions to dismiss challenge Plaintiffs' Article III standing as to them, those motions are DENIED.

C.    *Leon* Release

Maersk argues, echoed by the other defendants, that Plaintiffs' complaint must be dismissed because the claims were released pursuant to the court-approved settlement agreement in Leon v. Maersk Inc.  See Doc. No. 34 at 13–17; Doc. No. 37 at 1; Doc. No. 42 at 5 n.1.  The Leon class action centered around an allegation that Maersk caused the Plan to pay excessive and discriminatory recordkeeping and administration ("RKA") fees to the Plan's recordkeeper, John Hancock Retirement Plan Services, and in doing so breached its duties under ERISA.  See generally Compl., Leon v. Maersk Inc., No. 3:23-cv-00602-RJC-SCR (W.D.N.C. filed Sep. 22, 2023), Dkt. No. 1 [hereinafter "Leon Complaint"].  The parties to that case settled prior to the resolution of any dispositive motions.  See Leon, No. 3:23-cv-00602-RJC-SCR, 2024 WL 4942394 (W.D.N.C. Dec. 2, 2024); see also Class Action Settlement Agreement, Leon v. Maersk Inc., No. 3:23-cv-00602-RJC-SCR (W.D.N.C. filed July 2, 2024), Dkt. No. 23 [hereinafter "Leon Settlement Agreement"].  Because Plaintiffs' claims in this action, as alleged in the

13

complaint, do not share a common factual predicate with the <u>Leon</u> class action, the <u>Leon</u> release is not a basis for dismissal.

The release defense requires the party asserting the defense to show that the release (1) applied to the plaintiffs, (2) encompassed the claims advanced in the present suit, and (3) was legally enforceable (e.g., not the product of fraud or duress).  See <u>Budrow v. Nat'l City Mortg. Co.</u>, No. 21-cv-10118-ADB, 2022 WL 14829551, at *8 (D. Mass. Oct. 26, 2022); <u>Nottingham Partners v. Trans-Lux Corp.</u>, 925 F.2d 29, 32 (1st Cir. 1991); <u>Davignon v. Clemmey</u>, 322 F.3d 1, 17 (1st Cir. 2003) (applying Massachusetts law); <u>see also</u> <u>Citibank Glob. Markets, Inc. v. Rodríguez Santana</u>, 573 F.3d 17, 23 (1st Cir. 2009) ("Release is an affirmative defense, and such a defense will support a motion to dismiss only where it is (1) definitively ascertainable from the complaint and other sources of information that are reviewable at this stage, and (2) the facts establish the affirmative defense with certitude." (citation modified)); Fed. R. Civ. P. 8(c)(1).

Maersk's invocation of the release defense fails on the second prong: it has not shown, at this stage, that Plaintiffs' claims fall within the scope of the <u>Leon</u> release.[8]  "It is well-settled that 'in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim <u>based on the identical factual predicate</u> as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'"  <u>City P'ship Co. v. Atl. Acquisition Ltd. P'ship</u>, 100 F.3d 1041, 1044 (1st Cir. 1996) (emphasis added) (quoting <u>TBK Partners, Ltd. v. W. Union Corp.</u>, 675 F.2d 456, 460 (2d Cir. 1982)); <u>accord</u> <u>Reppert v. Marvin Lumber & Cedar Co.</u>, 359 F.3d 53, 59 (1st Cir. 2004).  In other words, a

---

[8] There appears to be no dispute, at least for present purposes, that Plaintiffs here were <u>Leon</u> class members, that Defendants here are "Released Parties" under the <u>Leon</u> settlement agreement, and that most if not all of Plaintiffs' claims here fell within the <u>Leon</u> class period.

class-action settlement may release all claims (including those advancing different theories of liability or seeking different relief) that share an "identical factual predicate," or "common gravamen," with the original class action.  See, e.g., City P'ship Co., 100 F.3d at 1044 (citing TBK Partners, Ltd., 675 F.2d at 460; Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287–88 (9th Cir. 1992)); Nottingham Partners, 925 F.2d at 33–34; see also 6 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 18:21 (6th ed. 2025) ("The identical factual predicate test permits the release of claims that go beyond the particular claims pleaded in the class's complaint, so long as the claims are transactionally related to those at the heart of the case."); Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991) (discussing "transactional" standard).

The Leon settlement agreement releases, in broad terms, all claims sharing a factual predicate with the Leon claims.[9]  This interpretation of the provision accords with the Leon parties' presentation of the release in court filings and to class members—as limited to claims based on the same factual predicate.  See Pl.'s Mem. of Law in Supp. of Mot. for Prelim. Approval of Class Action Settlement at 5–6, Leon, No. 3:23-cv-00602-RJC-SCR (W.D.N.C. filed June 21, 2024), Dkt. No. 20-1 (noting that release was "tailored to claims that were asserted in the action or could have been asserted based on the same factual predicate"); Pl.'s Mem. of Law in Supp. of Mot. for Final Approval of Class Action Settlement at 15–16, Leon, No. 3:23-

---

[9] The agreement released, in relevant part, "any and all claims" that "arise out of, relate to, or are based on, or have any connection with" any allegations that were or could have been alleged in the Leon class action "based on the same factual predicate."  Leon Settlement Agreement ¶ 1.38.1.  The agreement also identifies as released certain theories of ERISA liability, including "any alleged breach of the duty of loyalty, care, prudence, diversification, or any other fiduciary duties or prohibited transactions under ERISA relating to the Plan's service providers or Plan's administration."  Id. ¶ 1.38.2.  And it releases claims that "would be barred by res judicata."  Id. ¶ 1.38.3.

cv-00602-RJC-SCR (W.D.N.C. filed Nov. 22, 2024), Dkt. No. 29 (urging court to find release appropriate because "[a] court can approve a release of claims that share an 'identical factual predicate' with claims alleged in a case" (alteration in original) (quoting McAdams v. Robinson, 26 F.4th 149, 160 (4th Cir. 2022))); see also Class Notice at 4, 6, Leon, No. 3:23-cv-00602-RJC-SCR (W.D.N.C. filed Nov. 22, 2024), Dkt. No. 21-2 (advising class members that "[g]enerally, the release means that Settlement Class members will not have the right to sue the Released Parties for conduct during the Class Period arising out of or relating to the allegations in the lawsuit" and that "[i]f you do nothing, you will release any claims you may have against Released Parties concerning the conduct Plaintiff alleges in her Complaint").

To show that the Leon release bars the present litigation, then, Maersk would need to show that the two cases share a common factual predicate. It has not made this showing. Maersk argues that the "common gravamen" between Leon and the present suit is "that the Plan fiduciaries employed an imprudent process in carrying out their fiduciary duties under ERISA, which led to fiduciary breaches and prohibited transactions relating to the Plan's service providers and the Plan's administration." Doc. No. 65 at 6–7 (citing Leon Complaint ¶¶ 85–87, 129–130; Leon Settlement Agreement ¶ 1.38.1). But this argument elides the critical distinction between facts and theories of liability. Cf. Kale, 924 F.2d at 1166 ("[O]ur focus must not be the theoretical raiment in which the claims are robed, but whether the underlying facts of both transactions were the same or substantially similar." (citation modified)). Both Leon and the present case allege Maersk breached its duties under ERISA, but they do so on distinct, unrelated factual bases. The gravamen of the Leon litigation was that Maersk caused the Plan to pay excessive and discriminatory RKA fees. See generally Leon Complaint. The factual basis for the present case, as set out in the complaint, is the decision to offer and maintain an allegedly

16

underperforming stable-value fund within the Plan portfolio.  See generally Doc. No. 1.  The two cases do not share a common nucleus of operative fact; indeed, the extent of the factual overlap is that both involve Maersk retirement plan.  Accordingly, the motions to dismiss are DENIED insofar as they hinge on the Leon settlement and release.

D.    Failure to State a Claim

As the Court explained above, Plaintiffs have not plausibly alleged that the Plan offers a John Hancock investment product (despite the complaint's labeling it the "Hancock FA").  Cf. Iqbal, 556 U.S. at 678 (noting plausibility requires more than "labels and conclusions").

That pleading failure is fatal to all of Plaintiffs' liability theories.  As the Court has explained, if the product is not a John Hancock product (and it is not), Plaintiffs have not alleged a prohibited transaction with John Hancock, and their prohibited-transaction and duty-of-loyalty claims, as formulated in the complaint, fail.  Doc. No. 1 ¶¶ 2–3, 88, 90–91.  Whether Plaintiffs could plausibly identify a different prohibited transaction involving New York Life rather than John Hancock, as counsel suggested at oral argument, is not presently before the Court.

Plaintiffs' duty-of-prudence claim fails, too.  Without factual allegations about the characteristics of the fund actually offered by the Plan (apparently a New York Life stable-value fund), the Court has no way to assess whether the comparators Plaintiffs offer are meaningful.  Id. ¶¶ 65–72, 87; see also, e.g., Lalonde v. Mass. Mut. Ins. Co., 728 F. Supp. 3d 141, 156–57 (D. Mass. 2024) (concluding that proffered comparators were so different as to be an "apples-to-oranges" comparison (citation modified)).  Of course, the test of "prudence" is "one of conduct," not of the "performance of the investment," and prudence "cannot be measured in hindsight."  Barchock v. CVS Health Corp., 886 F.3d 43, 44–45 (1st Cir. 2018) (emphasis in original) (citation modified).  Comparators that provide a meaningful benchmark are useful to raise an inference of imprudence—particularly because, at the pleadings stage, participants often lack

17

insight into a fiduciary's process—but fiduciaries are under no obligation to simply select the highest-return product. See Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 719 (2d Cir. 2013); Johnson v. Parker-Hannifin Corp., 122 F.4th 205, 216 (6th Cir. 2024); Sellers v. Trs. of Bos. Coll., 647 F. Supp. 3d 14, 25 (D. Mass. 2022).

Here, however, Plaintiffs' allegations supporting their duty-of-prudence claim turn primarily on the comparisons they offer between the "Hancock FA" and supposedly similar products—and, most importantly, between the crediting rate given by the "Hancock FA" in the Plan's portfolio versus the rate it offered in the open market during the same period. Doc. No. 1 ¶¶ 65–72. The latter comparison could be particularly powerful evidence of imprudence if, in fact, the "Hancock FA" in the Plan is the John Hancock product offered in the open market. See id. ¶ 65 (alleging that "the same fixed annuity was offered with a 4.33% rate in the Fi360 database, while the Defendant stuck with their 3.61% rate for Plan participants at that time," suggesting Defendants "could have simply asked John Hancock . . . to at least match the better rate being openly offered . . . in the marketplace" (emphasis in original)). But because Plaintiffs have not plausibly alleged that the fund offered by the Plan is the John Hancock fund offered to the public, the comparison is meaningless. The same is true for the other purported comparators: absent a plausible allegation of the identity of the stable-value fund offered by the Plan, the Court has no way to know whether the comparisons are apples to apples or to oranges. Without their asserted comparators, Plaintiffs have only a conclusory allegation that, "[o]n information and belief, Maersk and the [Pension] Committee had no process or policy at all . . . for investigating, selecting, monitoring, and replacing fixed annuity products." Id. ¶ 62. That single allegation does not suffice to state a claim.

18

Finally, Plaintiffs' co-fiduciary liability claims are derivative of their primary liability claims.  Id. ¶¶ 93–96; see also 29 U.S.C. § 1105(a); Coulter v. Morgan Stanley & Co. Inc., 753 F.3d 361, 368 (2d Cir. 2014); Jackson v. New England Biolabs, Inc., 729 F. Supp. 3d 60, 70 (D. Mass. 2024).  Because Plaintiffs have failed to state a primary liability claim, their co-fiduciary claims fail, too.

Plaintiffs have failed to plausibly state a claim for relief against any defendant, and the complaint must be dismissed.  The motions to dismiss are thus ALLOWED to this extent.

IV.    CONCLUSION

For the foregoing reasons, the motions to strike (Doc. Nos. 49, 51, 53, 69, 71) are DENIED, and the motions to dismiss (Doc. No. 33, 36, 41) are DENIED IN PART and otherwise ALLOWED as described herein.

Plaintiffs have indicated their intention to seek leave to amend their complaint.  Plaintiffs may file a motion for leave to amend on or before September 4, 2026.  The motion, if made, shall include Plaintiffs' proposed amended complaint.  If the proposed amended complaint seeks to add new defendants, Plaintiffs shall comply with the requirements of Local Rule 15.1.

By the same deadline, the parties (along with any newly proposed parties) shall file a joint status report stating their joint or separate positions for a briefing schedule governing the motion for leave to amend.  The Court anticipates that any defendants named in the proposed amended complaint will advance their Rule 12 objections to the proposed amended complaint in their opposition to the motion for leave to amend.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

19